504

EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE MAYAGÜEZ, HON. ÁNGEL FIOL NEGRÓN, JUEZ, demandado. EMILIA DETRÉS GALARZA, Interventora.

Número 2336.

*Sometido:* 8 de mayo de 1958. *Resuelto:* 20 de junio de 1958.

Hon. *Secretario de Justicia J. B. Fernández Badillo* y *Arturo Estrella, Fiscal del Tribunal Supremo,* abogados del peticionario; *José R. Gelpí,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

A solicitud del Ministerio Público expedimos certiorari para revisar un dictamen de la Sala de Mayagüez del Tribunal Superior que declaró nula cierta orden de allanamiento y suprimió la evidencia obtenida en el diligenciamiento de la misma. Los hechos ocurrieron en el caso seguido en dicha Sala contra Emilia Detrés Galarza (M-56–145) por infracción a la Ley 220 de 15 de mayo de 1948, 33 L.P.R.A. sec. 1247, usualmente conocida como Ley de la Bolita. En 8 de mayo de 1956 el detective Julio Colón Sánchez compareció en Mayagüez ante el juez de paz Sr. Luis Acevedo Acevedo y prestó declaración jurada en virtud de la cual el juez Acevedo expidió en igual fecha y sitio una orden de allanamiento contra Emilia Detrés.

La acusada solicitó la nulidad de la orden de allanamiento y la supresión de la evidencia obtenida en el diligenciamiento de la misma, entre otras cosas, porque el Juez de Paz *de "Rincón"* Sr. Acevedo no tenía facultad en ley para actuar en Mayagüez, ni podía tampoco ser asignado por el Juez Presidente del Tribunal Supremo para ejercer sus funciones en ese municipio. En el curso de la vista las partes estipularon lo siguiente:

"Fiscal: Entonces que se entienda que dicho Luis Acevedo, quien es juez de paz del Tribunal de Paz de Puerto Rico, Sección de Rincón, fué, mejor dicho, vino a Mayagüez en comisión

actuando como tal juez de paz y como tal juez de paz investigaba casos en Mayagüez y expedía órdenes de allanamiento y hacía determinación de causa probable en casos de arresto. Eso es una realidad.

"Lic. Gelpí: No hay objeción que se apruebe la estipulación así. Se estipuló también que no era para la fecha de la expedición de esta orden . . . . . , no era abogado.

"La Corte: ¿La contención del abogado de la defensa es que un juez de paz no puede expedir órdenes de allanamiento y que él no podía expedirlas?

"Lic. Gelpí: Que él no podía expedirla. La estipulación como se ha establecido es que él estaba aquí en su capacidad de juez de paz para hacer trabajos de juez de paz."

Resolviendo la cuestión planteada el Juez recurrido, después de posponer la continuación de la vista para darle consideración al asunto, se expresó así según aparece en la transcripción de los procedimientos:

"La resolución del tribunal es la siguiente:

"El tribunal entiende que, de acuerdo con la Ley de la Judicatura de 1952 en relación con lo dispuesto en el artículo 4 de la Ley Orgánica de la Legislatura (sic) de 1950, un juez de paz asignado a una sala o sección o sitio determinado no puede ser asignado para actuar o trabajar en otro sitio donde no haya una sala creada de un juzgado de paz, o sea; que disponiendo el artículo 4 de la Ley de 1950 que las salas del Juzgado de Paz existirán en aquellos municipios en que no tenga su capitalidad una o más Salas del Tribunal Municipal, hoy Tribunal de Distrito, habiendo en Mayagüez, o siendo Mayagüez una capitalidad con dos Salas del Tribunal de Distrito, antes Tribunal Municipal, no puede crearse por nombramiento accidental o en otra forma, mediante el funcionamiento de un juez, una sala adicional del Juzgado de Paz en la ciudad de Mayagüez.

"Estimo y concluyo, por tanto, que la orden de allanamiento dictada en este caso, expedida en este caso el día 8 de mayo de 1956 por Luis Acevedo Acevedo, Juez de Paz de Rincón, actuando en Mayagüez en el Tribunal de Distrito, Sala de Mayagüez, asignado a dicha Sala del Tribunal de Distrito con carácter más o menos indefinido, no tenía autoridad para expedir dicha orden de allanamiento, por lo tanto la misma es nula e ineficaz.

"Se ordena y dispone que se suprima y no se pueda presentar en evidencia en el proceso cualquier objeto, artículo o material ocupado a virtud de dicha orden de allanamiento en este caso."

El problema envuelve la forma y manera en que el juez Sr. Acevedo podía ejercer sus funciones de juez de paz bajo la legislación vigente a la fecha en que se expidió la orden de allanamiento, 8 de mayo de 1956, así como la validez de sus actuaciones y de la designación para actuar como tal juez de paz en la municipalidad de Mayagüez, donde tienen su asiento dos salas del Tribunal de Distrito. El asunto a resolver es uno escueto de interpretación de estatutos. Aunque ha de decidirse a la luz de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico,—Ley 11 de 24 de julio de 1952, 4 L.P.R.A. sec. 1,—hay que enfocarlo desde el año 1950 cuando se aprobó la Ley Orgánica de la Judicatura de Puerto Rico,—Ley 432 de 15 de mayo de 1950,—porque con esta legislación empieza a tomar ciertos perfiles de flexibilidad la organización judicial que hoy disfrutamos. Cf: *Rodríguez* v. *Registrador*, 75 D.P.R. 712; *Suliveres* v. *Arjona*, 76 D.P.R. 917.

La Ley 432 de 1950 constituyó a Puerto Rico en un solo distrito judicial y dispuso que los tribunales de justicia ejercerían sus funciones sobre la totalidad del único distrito judicial constituído. Creó el Juzgado de Paz como tribunal de justicia, junto con el Tribunal Municipal, el de Distrito y el Tribunal Supremo. Dispuso que una *"sala"* del Juzgado de Paz funcionaría en cada municipio donde no tuviera su capitalidad una o más salas del Tribunal Municipal. Conviene no perder de vista esto último porque tiene mucho que ver con el problema a ser resuelto. A cada *"sala"* del Juzgado de Paz se le dió facultad para conocer: (*a*) de infracciones de ordenanzas municipales *correspondientes al municipio en que radicaba la "sala"*; (*b*) de delitos menos graves *cometidos dentro* del municipio en que radicaba la *"sala"*, castigables con multa no mayor de $30 o cárcel por no más de 30 días, y (*c*) de todo otro asunto en que por ley se hubiere

conferido jurisdicción exclusiva o concurrente a los Juzgados de Paz existentes a la vigencia de dicha Ley 432 ([1]). Por esta Ley 432 de 1950 se crearon 42 cargos de jueces de paz, con poder todo juez para entender en cualquier causa de la jurisdicción del Juzgado de Paz que, como hemos visto, cubría todo el territorio de Puerto Rico como un solo distrito. Se le confirió facultad, además, para actuar como juez instructor en casos de delito grave, señalar y aceptar fianzas y para ejercer las mismas facultades, deberes y funciones de los jueces de paz nombrados bajo la legislación anterior.

A pesar de que la Ley Orgánica de la Judicatura de 1950 inició una política pública para hacer de la organización judicial un instrumento más flexible y de más fácil manejo en su funcionamiento administrativo, aún quedaron rasgos de

---

([1]) El Juez de Paz se creó por el artículo 14 de la "Ley Estableciendo para Puerto Rico un Código de Enjuiciamiento Criminal" aprobada en 1º de marzo de 1902. Se autorizó al Gobernador, de acuerdo con el Consejo Ejecutivo, para nombrar tantos jueces de paz en los distritos judiciales de Puerto Rico como él creyese procedente. Se le declaró magistrado, con facultad, entre otras cosas, para expedir órdenes de arresto; fijar y admitir fianzas; tomar juramentos en las causas o procesos pendientes ante él y en todos los demás casos en que fuere necesario en el ejercicio de su autoridad y deberes; castigar los desacatos a su autoridad, y para conocer de todos los casos menos graves que acarreasen pena de multa no mayor de $250 o prisión en cárcel por no más de seis meses, así como de las infracciones a ordenanzas municipales y de policía. Este juez de paz sustituyó al Tribunal de Policía creado por la Orden General 195 de 29 de noviembre de 1899 en cada municipio donde existía un Tribunal Municipal, creado éste a la vez por la Orden General 118 de 16 de agosto de 1899 en cada uno de los municipios mencionados en esta Orden. Por la Ley de 10 de marzo de 1904 que reorganizó el sistema judicial se abolió el cargo de juez de paz y el de juez municipal según existían, y se creó en sustitución el cargo de juez municipal. Pero por la propia ley, se establecieron nuevamente cargos de jueces de paz en San Juan, Ponce y Mayagüez, y en los demás municipios, excepto en aquellos distritos de cortes municipales en que sólo había una población. Se facultó a este nuevo juez de paz para conocer de faltas castigables con pena no mayor de $15 de multa o cárcel no mayor de 30 días, y para conocer de todos los casos por infracciones de las ordenanzas municipales. Podían actuar además como jueces instructores. Ya desde la aprobación de la Ley de Enjuiciamiento Criminal de 1902 los jueces de paz quedaron investidos con poder para expedir órdenes de allanamiento y para entender en los demás incidentes relativos a su diligenciamiento. Las leyes de presupuesto para 1949–50 y 1950–51 asignaron para cortes de paz funcionando en 53 municipios y en Culebra.

rigidez del sistema anterior. Así, por ejemplo, el referido estatuto concedió facultad al Procurador General, entonces, para designar las *salas* y *secciones* (²) de los tribunales en que habrían de prestar servicio los funcionarios judiciales, pero dispuso, no obstante, que las designaciones de jueces de paz, municipales y de distrito, y las de ciertos otros funcionarios se harían con *carácter permanente* por el término para el cual fuesen nombrados. Lo que es igual, se conservó en este respecto la inmovilidad del sistema anterior. Sólo en los casos mencionados en el art. 37 de la Ley 432, entre ellos de renuncia, ausencia, inhibición, licencia o acumulación de trabajo, se autorizó la designación de jueces para trabajar en otras *salas* o *secciones* por no más de 90 días. Esta asignación nada más que de carácter temporal podía hacerla el Juez Presidente del Tribunal Supremo a petición del Procurador General. Y en lo que respecta más particularmente a la jurisdicción del Juzgado de Paz, se dejó en pie una demarcación territorial para cada *sala* limitativa de dicha jurisdicción en lo relativo a conocer de infracciones y delitos. Al entrar en vigor la Ley 432 de 1950 sólo pudieron permanecer en sus cargos, por el resto del término para el cual se nombraron, los jueces de las cortes de paz existentes en municipios en que habrían de funcionar *salas* del Juzgado de Paz creado por dicha Ley. Los demás quedaron abolidos.

Llegamos entonces a la Ley de la Judicatura de 1952. Conservó, como antes, un solo distrito judicial formado por la totalidad de Puerto Rico. En sustitución de los anteriores Tribunales de Distrito y Municipales creó el Tribunal de Primera Instancia compuesto, respectivamente, por el Tribunal Superior y el de Distrito, y fijó *salas* a dicho Tribunal de Primera Instancia distribuídas geográficamente en la misma forma en que lo estaban las salas de los tribunales sustituídos. *Ley 11 de 24 de julio de 1952, secs. 1, 9, 11, 16.* (4 L.P.R.A. secs. 1, 61, 91, 151). En lo concerniente al Juzgado de Paz,

---

(²) No tiene el mismo significado de la "sección" del Tribunal de Primera Instancia bajo la Ley de la Judicatura de 1952.

la Ley de 1952 dispuso que habrían "como hasta el presente" 42 jueces de paz con facultad, cada juez, para ejercer las funciones y poderes de la autoridad judicial ejercidos por los jueces de paz al tiempo de empezar a regir la referida ley y expresamente: la función y facultad de fijar y aprobar fianzas y de expedir órdenes de arresto, de registro y de allanamiento, pero sin facultad dichos jueces para resolver casos. (³)

▆▆▆▆ Privado el Juzgado de Paz de la facultad de juzgar y decidir casos, desapareció la razón de ser de sus distintas *salas* con demarcaciones específicas cada una, las cuales existían debido a la jurisdicción que la Ley de 1950 confirió al Juzgado de Paz para conocer de delitos e infracciones cometidos sólo dentro de aquellos municipios en donde la Ley de 1950 constituyó esas salas. En vista de lo innecesario de las mismas, y al no fijar, por otra parte, la Ley de 1952 subdivisión particular alguna dentro del distrito judicial único en la cual el Juzgado de Paz habría de continuar ejerciendo aquellas funciones de la autoridad judicial de la cual no fué privado, la conclusión es que, como cuestión de ley, el Juzgado de paz puede ejercer válidamente tales funciones en cualquier parte del territorio geográfico de Puerto Rico. Como cuestión de hecho, para una eficiente y ordenada administración de justicia, los jueces de paz se asignan por el Juez Presidente del Tribunal Supremo a determinado sitio o demarcación dentro del distrito judicial, a tono con las exigencias del trabajo y la necesaria distribución del mismo, bajo la facultad que incuestionablemente tiene el Juez Presidente, de acuerdo con la Constitución, para dirigir la administración de los tribunales. (⁴) Problemas como los que dieron lugar a las

---

(³) Se dispuso en la sec. 22 de la Ley de 1952 que el juez de paz no puede resolver casos de la competencia del Tribunal de Distrito o del Superior. En vista de la competencia dada al Tribunal de Distrito por la sec. 18, el juez de paz perdió toda facultad para juzgar y resolver casos.

(⁴) *Constitución del Estado Libre Asociado de Puerto Rico, Art. V, Sección 7.* Dentro de esta facultad para administrar dada al Juez Presidente está comprendida la de asignar y trasladar jueces. Véase: *Informe*

decisiones de *Figueroa* v. *Tribunal*, 72 D.P.R. 24; *Pueblo* v. *Tonje*, 71 D.P.R. 317 y *Partido Popular* v. *Gallardo*, 56 D.P.R. 706, ya no preocupan en este caso.

Según surge de los procedimientos habidos, el Sr. Acevedo se encontraba en Mayagüez en comisión actuando como juez de paz al expedir, el 8 de mayo de 1956, la referida orden de allanamiento.    Como Juez de Paz de Puerto Rico, el Sr. Acevedo podía válidamente ejercer sus funciones en Mayagüez y expedir allí una orden de allanamiento, y propiamente pudo ser asignado a ese municipio por el Juez Presidente del Estado Libre Asociado, no obstante el hecho de que en Mayagüez tenían su sede, como en efecto la tienen, dos salas del Tribunal de Distrito.    Véase: Clark and Rogers: *The New Judiciary Act of Puerto Rico: A definite Court Reorganization*, 61 Yale L. J. 1147.    Tal fué el espíritu de la reforma. (⁵)

En virtud de las anteriores consideraciones, es insostenible en derecho la resolución de la Sala de Mayagüez del Tribunal Superior que declaró ineficaz la orden de allanamiento expe-

---

*de la Comisión de la Rama Judicial a la Asamblea Constituyente.* De acuerdo con la *Sección 10 del Artículo II* de nuestra Constitución, ordenar arrestos, registros y allanamientos es función exclusivamente judicial.

La facultad conferida al Gobernador en la sección 21 de la Ley de la Judicatura de 1952 para designar un sustituto del juez de paz en caso de que por enfermedad, ausencia o por cualquier otro motivo éste no pudiere cumplir con los deberes de su cargo, tuvo el propósito de mantener en funciones el número completo de jueces de paz retenidos.

(⁵) Los autos hacen referencia al Sr. Acevedo como Juez de Paz de Rincón.    Podemos tomar conocimiento judicial de que él fué nombrado por el Gobernador juez de paz en 16 de abril de 1952 por el término de 4 años. De acuerdo con el artículo 37 de la Ley 432 de 1950, en vigor al hacerse el nombramiento, el Juez Acevedo debió haber sido asignado por el Procurador General a una *sala* del Juzgado de Paz, presumimos que a la de Rincón. Al entrar en vigor poco más tarde la Ley de la Judicatura de 1952, eliminadas las *salas* del Juzgado de Paz, el Sr. Acevedo quedó en su cargo de juez, tanto a tenor de la sección 21 de esta Ley, como en virtud del mandato constitucional (*Constitución, Artículo V, Sección 13*) disponiendo que de *modificarse* o eliminarse por ley un tribunal o una *sala* o sección del mismo la persona que en él ocupare un cargo de juez continuará desempeñándolo durante el resto del término por el cual fue nombrado, "y ejercerá aquellas funciones judiciales que le asigne el Juez Presidente del Tribunal Supremo."

dida por el Juez de Paz Sr. Acevedo en 8 de mayo de 1956 y suprimió la evidencia obtenida en el diligenciamiento de la misma. *Se anula dicha resolución y se dispone que los autos del caso M–56–145, El Pueblo de Puerto Rico v. Emilia Detrés, sean devueltos al tribunal recurrido para ulteriores procedimientos consecuentes con esta opinión.*