*In re* JAIME MARÍN BÁEZ, querellado.

Número 4.
*Sometido:* 18 de marzo de 1958. *Resuelto:* 23 de abril de 1959.

*Hon Secretario de Justicia Hiram R. Cancio (J. B. Fernández
Badillo, ex-Secretario de Justicia, en la querella) y Noel Co-
lón Martínez y Jorge Meléndez Vela, Fiscal Especial General
y Fiscal Especial, respectivamente, abogados del querellante;
Jorge Marín Báez y Raúl A. Feliciano, abogados del quere-
llado.*

EL JUEZ ASOCIADO SEÑOR SERRANO GEYLS emitió la opinión
del Tribunal.

El Secretario de Justicia formuló querella ante este Tri-
bunal contra el Sr. Jaime Marín Báez, Juez del Juzgado de
Paz de Puerto Rico, Sala de Jayuya, imputándole haber ob-

servado una conducta ilegal, inmoral e impropia de un magistrado consistente, primero, en haber tenido contacto carnal en su despacho, en el local donde está ubicado el Juzgado de Paz de Jayuya, con Isabel Abraham Vázquez, quien no era su esposa, siendo el querellado entonces un hombre casado; y segundo, porque ejerciendo indebidamente la influencia de su cargo, hizo que la Secretaria del Tribunal de Distrito de Puerto Rico, Sala de Adjuntas, registrara una denuncia por el delito de adulterio contra Isabel Abraham Vázquez, alegadamente cometido con el propio querellado, sabiendo que el policía denunciante no compareció a la Secretaría de dicho Tribunal a jurarla, ni tenía conocimiento, ni había investigado los hechos que en la denuncia se imputaban, y haciendo constar que ésta había sido sometida para su acción al Hon. Juez Rafael Cintrón Lastra, del Tribunal de Distrito, Sala de Adjuntas, constándole al querellado que tal afirmación era falsa. Añadía el segundo cargo que el querellado había pretendido que con la mencionada denuncia se sustituyera otra que se había formulado a instancias del querellado y por orden del Juez Cintrón Lastra, y había instado a la Secretaria a destruir esta primera denuncia, sosteniendo ante ella que tal cosa podía hacerse y que ese era el criterio del Hon. Juez Miguel A. Velázquez, del Tribunal Superior, Sala de Ponce, constándole al querellado que su petición era ilegal, inmoral e impropia y que era falso que el Juez Velázquez le hubiese expuesto criterio alguno sobre tal pretensión.

El querellado interpuso una Moción de Desestimación, la cual declaramos sin lugar al comienzo de la vista, anunciando que los fundamentos de nuestra resolución se darían a conocer al resolverse el asunto en sus méritos. Durante la vista, celebrada ante el pleno de este Tribunal, ambas partes ofrecieron abundante prueba. A base de nuestra observación de los testigos y del detenido análisis que hemos realizado de toda la prueba en autos, no tenemos duda alguna de que los hechos alegados en la querella quedaron claramente probados y que el querellado incurrió, por lo tanto, en la "conducta inmoral"

que proscribe la sec. 24 de la Ley de la Judicatura (4 L.P.R.A. sec. 232).(¹) Pasamos, por consiguiente, a exponer los fundamentos de nuestro fallo sobre la Moción de Desestimación.

 Sostiene en primer término el querellado que "este Tribunal carece de jurisdicción o facultad legal para entender en este caso, toda vez que no existe disposición alguna en la ley que autorice tal formulación de cargos contra un juez de paz." Aduce en apoyo de esa tesis que la sec. 24 de la Ley de la Judicatura, al instrumentar la Sec. 11 del Art. V de la Constitución estatal y establecer las causas y el procedimiento de destitución, se refiere taxativamente a los jueces del Tribunal de Primera Instancia (compuesto por el Tribunal de Distrito y el Tribunal Superior) y no a los jueces de paz. Añade que aunque la sec. 21 de dicha Ley(²) (4 L.P.R.A. sec. 201) hace

---

(¹)"Cualesquiera cargos que se formularen contra cualquier juez del Tribunal de Primera Instancia serán presentados ante el Director Administrativo de la Oficina de Administración de los Tribunales, quien informará de ello al Juez Presidente, y si el Tribunal Supremo así lo desea, recomendará la acción ulterior a tomarse o el archivo de los cargos. El Tribunal Supremo ordenará que se practique la investigación que creyere conveniente y podrá solicitar del Secretario de Justicia que practique tal investigación y rinda un informe al Tribunal.

"Si el Tribunal Supremo determinare que existe causa para ulteriores procedimientos, podrá solicitar del Secretario de Justicia o de cualquier funcionario del Tribunal que radique la correspondiente querella. El Secretario de Justicia también, a iniciativa propia, o por orden del Gobernador, podrá iniciar el procedimiento para la destitución de un juez y entonces actuará como querellante. El procedimiento se iniciará mediante querella dirigida al Tribunal Supremo imputándole al juez conducta inmoral o negligencia en sus deberes judiciales. El Tribunal dará a las partes la oportunidad de ser oídas, en unión a sus testigos y el Tribunal podrá en su discreción mientras se sustancia el procedimiento suspender al Juez de empleo y sueldo. Si el Tribunal considerare que los cargos, o parte de ellos, han sido probados, podrá censurar o suspender al juez querellado, o destituirlo permanentemente de su cargo según, bajo las circunstancias concurrentes, creyere que sea la pena más adecuada.

"Los jueces del Tribunal Supremo podrán ser destituídos solamente mediante el procedimiento de residencia establecido por la Constitución del Estado Libre Asociado."

(²)"Habrá como hasta el presente cuarenta y dos (42) jueces de paz, a ser nombrados por el Gobernador, con el consejo y consentimiento del Senado, por un término de cuatro años y hasta que sus sucesores tomen posesión de sus cargos. *Los actuales jueces de paz seguirán en sus cargos hasta la expiración del término por el cual fueron nombrados y serán desti-*

referencia expresa a la sec. 24 en cuanto a la destitución de los jueces de paz, esa mención cubre únicamente a las personas que ocupaban tales cargos a la fecha en que comenzó a regir la ley y no a las que, como el querellado, los han desempeñado después.

Una vez más estamos ante una solicitud para que en la función interpretativa apliquemos exclusivamente la letra de la ley, aun cuando tal aplicación nos lleve al absurdo. *Cf. Borinquen Furniture, Inc.* v. *Tribunal de Distrito*, 78 D.P.R. 901, 905 (1956). Si aceptáramos la argumentación del querellado tendríamos que atribuírle a la Asamblea Legislativa que en 1952 aprobó la Ley de la Judicatura el inexplicable propósito de diseñar un procedimiento de destitución que se aplicaría exclusivamente a los jueces de paz que estaban en funciones en 1952, pero no a sus sucesores, y el de convertir a los jueces de paz nombrados después de la vigencia de la ley en los únicos miembros de la judicatura, y muy probablemente en los únicos funcionarios públicos, exentos de destitución. (3) Obviamente, no es posible imputarle ese contrasentido al legislador. Se trata únicamente de haberse incurrido en una imperfección gramatical al redactarse la sec. 21, pero no cabe concederle a esa imperfección el rango de un mandato de ley.

_____

tuídos como más adelante se provee en la sec. 24 de esta Ley. Ninguna persona será nombrada juez de paz a no ser que haya cumplido veintiún (21) años de edad y goce de buena reputación.

"Si por razón de enfermedad, ausencia, o por cualquier otro motivo, un juez de paz no puede cumplir con los deberes de su cargo, el Gobernador designará a una persona capacitada para que actúe en su lugar hasta que el juez de paz pueda reanudar sus deberes." (Énfasis suplido.)

(3) *Cf. Re Watson*, 286 P.2d 254, 256 (Nev. 1955). Quedaría, como única posible alternativa, la de recurrir al poder inherente del Ejecutivo para destituir a los funcionarios que él nombra. *Meyers* v. *United States*, 272 U. S. 52 (1926); *Humphrey's Executor* v. *United States*; 295 U. S. 602 (1935); *Wiener* v. *United States*, 357 U. S. 349 (1958). Aún en la hipótesis de que tal doctrina fuese aplicable a un juez, surgiría el problema de una probable colisión entre ella y la Sección 11 del Artículo V de nuestra Constitución. En cuanto a la posición y funciones de los jueces de paz en el sistema judicial de Puerto Rico, examínese *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 504 (1958).

Resolvemos, en consecuencia, tal y como lo habíamos hecho implícitamente en *In re Dávila*, 79 D.P.R. 817, 818 (1957) que la sec. 24 de la Ley de la Judicatura se aplica a los jueces de paz.

En segundo lugar sostiene el querellado que la mencionada sec. 24 "es inconstitucional en su aplicación a este caso toda vez que habiendo este mismo Tribunal determinado la existencia de causa para la radicación de la querella está impedido de resolver el caso en los méritos ya que de hacerlo estaría privando al querellado del debido procedimiento de ley." Se apoya principalmente en el caso de *In re Murchison*, 349 U. S. 133 (1955), y cita también a *Wong Yang Sung v. McGrath*, 339 U. S. 33 (1950).

En *Murchison* se impugnó por segunda vez ante el Tribunal Supremo federal la constitucionalidad del sistema del estado de Michigan que autoriza a sus jueces a compeler la presencia de testigos para prestar testimonio en investigaciones criminales secretas.[4] Murchison y White, los apelantes en el caso, comparecieron ante uno de esos jueces a deponer sobre actividades de juego y de soborno oficial. Las contestaciones de Murchison convencieron al juez de que estaba cometiendo perjurio. Lo acusó por esa actuación y le ordenó comparecer ante él para mostrar causa por la cual no debería castigársele por desacato criminal. White se negó a contestar algunas de las preguntas que le hizo el juez, aduciendo que tenía derecho a asistencia de abogado antes de hacerlo. El juez lo acusó de desacato y le ordenó comparecer posteriormente. Luego el mismo juez les celebró un juicio

---

[4] En *In re Oliver*, 333 U. S. 257 (1948) el Tribunal Supremo federal había dictaminado que un juez actuando en tales circunstancias no podía castigar sumariamente a un testigo por un desacato cometido en la vista secreta y que el debido procedimiento exigía en tales casos un juicio público, luego de una notificación adecuada de los cargos y el derecho a confrontarse con los testigos en su contra, a citar testigos en apoyo de su defensa y a estar asistido de abogado. Véase sobre el sistema de Michigan y el caso de *Murchison*, Robert G. Scigliano, *The Michigan One-Man Grand Jury*, (1957) especialmente las págs. 80–84; Anotaciones en 54 Mich. L. Rev. 414 (1956); 44 Cal. L. Rev. 425 (1956) y 69 Harv. L. Rev. 119, 162–163 (1955).

público y les impuso una pena por desacato. El Tribunal Supremo de Michigan confirmó la sentencia y los acusados apelaron al Tribunal Supremo federal invocando, entre otras defensas, la garantía del debido procedimiento de ley. Dicho Tribunal, con la inconformidad de tres de sus jueces, aceptó el planteamiento de los apelantes y anuló la sentencia.

Consideró el Tribunal Supremo que en las circunstancias descritas un juez no podía tener completo desinterés en la culpabilidad o inocencia de un acusado; que como cuestión práctica lo más probable sería que las impresiones adquiridas por el juez durante la vista secreta tuviesen más peso en su ánimo que el testimonio utilizado en el juicio público; (5) que por no haber otros testigos de los incidentes ocurridos en la vista secreta, no se podía traer el testimonio de personas desinteresadas sobre lo sucedido en la cámara del juez; y que se le ofrecía al acusado la injusta alternativa de renunciar al contrainterrogatorio del juez—único testigo de lo ocurrido— o de contrainterrogarlo sabiendo que sería el mismo juez el llamado a dictaminar sobre la credibilidad de su testimonio.

Son claras y fundamentales las diferencias entre el procedimiento proscrito en *Murchison* y el que provee la sec. 24 de la Ley de la Judicatura. Se destaca inicialmente el hecho de que el primero es un procedimiento penal mientras que el segundo es civil, similar a uno de naturaleza administrativa,

---

(5) Al Tribunal le llamó poderosamente la atención el hecho de que al condenar a White el juez expresara lo siguiente: "Hay algo que no contiene el expediente de este caso y es la actitud del Sr. White, y quiero decir que esa actitud fue casi insolente en la manera que contestó las preguntas, y su actitud en la silla de los testigos . . . No sólo su actitud fue insolente, sino que también fue desafiante y deseo que eso conste en los autos." Al solicitar el abogado defensor que se eliminaran esas manifestaciones por no ser parte del récord original, el juez agregó: "Eso es algo que no aparece del récord, pero fue muy evidente para el tribunal." Comentó el Juez Black en su opinión: "Así el juez, a quien el debido procedimiento obliga a ser imparcial en la apreciación de la evidencia que se le somete, utilizó su propio conocimiento personal y su impresión de lo que había ocurrido en [la vista secreta] y su juicio se basó en parte en esa impresión, sin que su exactitud pudiera someterse a la prueba de un contrainterrogatorio adecuado." Pág. 138.

aunque *sui generis*. Esa diferencia, aunque importante por las mayores restricciones de constitución y de ley aplicables a los trámites que pueden privar a una persona de su libertad, no resulta decisiva. Así es porque la sec. 24 ordena conceder a las partes "la oportunidad de ser oídas" en un procedimiento que según el informe legislativo[6] es "esencialmente un juicio", y es requisito indispensable de todo juicio el desinterés e imparcialidad del juzgador.[7] Al traspasar, por ese motivo, las fronteras de la caracterización del procedimiento observamos que en el presente caso, contrario a lo sucedido en *Murchison:* 1) los jueces de este Tribunal no fueron en modo alguno testigos de los hechos ni estuvieron afectados personalmente por las actuaciones del querellado; 2) hubo numerosos testigos de tales hechos y el querellado tuvo completa oportunidad en una vista pública y con la debida asistencia de abogado de interrogarlos y de ofrecer aquellos testimonios que consideró favorecían su defensa; 3) la investigación inicial estuvo a cargo de ciertos funcionarios del Departamento de Justicia y los jueces de este Tribunal nunca se relacionaron con los testigos ni en manera alguna intervinieron en la investigación; 4) la querella la prepararon y firmaron dichos funcionarios; y 5) ellos la sostuvieron ante el Tribunal utilizando las pruebas y estrategia que consideraron convenientes. El caso de *Murchison*[8] es, por lo tanto, cla-

---

[6] 4 L.P.R.A. sec. 232, pág. 814.

[7] Sobre estos conceptos de "desinterés" e "imparcialidad" consúltese la opinión del Juez Jerome Frank en *In re J. P. Linahan,* 138 F.2d 650, 651–654 (C.C.A. 2, 1943).

[8] Considérese, además, que dos fallos recientes del Tribunal Supremo federal han limitado considerablemente los efectos del lenguaje amplio usado en *Murchison,* reduciendo su autoridad a los hechos específicos en él planteados. Examínense *Nilva* v. *United States,* 352 U. S. 385 (1957) y *Green* v. *United States,* 356 U. S. 165 (1958) en los cuales los jueces disidentes (352 U. S. 396, 403; 356 U. S. 193, 199) en vano solicitaron la aplicación de *Murchison* a otras situaciones, aun cuando en éstas los jueces sentenciadores habían sido afectados directamente por las actuaciones de los acusados. Véanse, además, *Sacher* v. *United States,* 343 U. S. 1 (1952); 2 Davis, *Administrative Law Treatise* (1958), págs. 177–178; *Yates* v. *United States,* 355 U. S. 66 (1957); *Offutt* v. *United States,* 348 U. S. 11 (1954); *Pueblo* v. *Susoni,* ante pág. 124 (19 de marzo de 1959).

·ramente inaplicable a una situación en la cual la participación de este Tribunal en la etapa inicial del procedimiento se reduce a ordenar una investigación de los hechos, [9] a examinar el informe correspondiente y a ordenar la formulación de una querella, si considera que existe causa "para ulteriores procedimientos." [10] Debemos resolver si este tipo de intervención preliminar vicia de inconstitucionalidad el procedimiento.

Esta es ya una cuestión trillada en el derecho administrativo norteamericano. Los más importantes organismos administrativos del gobierno federal y de los estados, responsables de la adjudicación de controversias que tienen profundos efectos no sólo sobre los litigantes sino también sobre la economía y la sociedad norteamericanas utilizan, desde hace largo tiempo, procedimientos de la naturaleza des-

[9] En el caso que estamos juzgando no tuvimos que ordenar la investigación, porque el Departamento de Justicia la inició por su cuenta al recibir una queja.

[10] El caso de *Wong Yang Sung*, que cita el querellado, tiene aún menos relación con el problema que nos ocupa. Se trataba de una orden de deportación contra el peticionario, quien apeló al Tribunal Supremo federal sosteniendo que la vista administrativa no se condujo de acuerdo con las prescripciones de la Ley de Procedimiento Administrativo (Administrative Procedure Act). El Tribunal dictaminó, por votación de seis a uno, que la citada ley se aplicaba a los procedimientos de deportación y específicamente la sec. 5(c) que prohibe a los funcionarios de investigación y acusación participar en la resolución de los casos, con algunas excepciones. No hubo una discusión formal de la cuestión constitucional. En el mismo año en que se resolvió el caso de *Wong Yang Sung*, 1950, el Congreso legisló para eximir los procedimientos de deportación de lo dispuesto en la *Administrative Procedure Act* sobre separación de funciones y en 1952 reafirmó ese criterio. 64 Stat. 1044, 1048 (1950); 66 Stat. 209 (1952). El Tribunal Supremo sostuvo la validez de esa actuación en *Marcello* v. *Bonds*, 349 U. S. 302, 311 (1955). Véase también *Sigurdson* v. *Landon*, 215 F.2d 791 798 (C.C.A. 9, 1954); *United States* v. *Heikkinen*, 240 F.2d 94, 99 (C.C.A. 7, 1957). Conviene aclarar, además, que no obstante la disposición de la sec. 5(c), la APA permite la combinación de funciones en numerosos casos. 2 Davis, *op. cit.* págs. 213–216. Las decisiones en *Shields* v. *Utah–Idaho R. Co.*, 305 U. S. 177 (1938) y *Yamataya* v. *Fisher*, 189 U. S. 86 (1903) que el querellado nos pide consultar, tampoco guardan pertinencia con el problema.

crita. Los tribunales federales y estatales([11]). en repetidas
ocasiones han resuelto que esa clase de actuación inicial—y
otras de aún más extensa participación—por sí solas no tras-
greden el debido procedimiento de ley. *Marcello* v. *Bonds*,
349 U. S. 302, 305, 311 (1955).; *Belizaro* v. *Zimmerman*, 200
F.2d 282, 283 (C.C.A. 3, 1952) ; *United States ex rel Dolenz*
v. *Shaughnessy*, 200 F.2d 288, 291 (C.C.A. 2, 1952) ; *Levers*
v. *Berkshire*, 159 F.2d 689, 693 (C.C.A. 10, 1947) ; *N.L.R.B.*
v. *Botany Worsted Mills*, 133 F.2d 876, 882–883 (C.C.A. 3,
1943) ; cert. denegado, 319 U. S. 751 (1943) ; *Brinkley* v.
*Hassig*, 83 F.2d 351, 356–357 (C.C.A. 10, 1936) ; *In re
Larsen*, 86 A.2d 430, 432, 435–436 (N. J. 1952) ; *Minn. State
Board of Medical Examiners* v. *Schmidt*, 292 N. W. 255, 257
(Minn. 1940), apelación desestimada, 311 U.S. 617 (1940).;
*Chosick* v. *Reilly*, 270 P.2d 547, 549 (Cal. 1954) ; *Cf. F.T.C.*
v. *Klesner*, 280 U. S. 19, 27 (1929) ; *Shaughnessy* v. *United
States ex rel Accardi*, 349 U. S. 280 (1955) ; *Harisiades* v.
*Shaughnessy*, 342 U. S. 580, 583 (1952) ; *State Board of
Optometrists* v. *Nemitz*, 90 A.2d 740, 748–750 (N. J. 1952).
Esa es también la norma que prevalece en nuestra jurisdic-
ción. *Rivera* v. *Junta de Relaciones del Trabajo*, 70 D.P.R.
5, 10 (1949). Su validez también ha sido aceptada en proce-
dimientos de destitución de funcionarios públicos. *Mangual,
Alcalde* v. *Poventud, Juez*, 60 D.P.R. 824, 828–830 (1942) ;
*Thompson* v. *City of Long Beach*, 259 P.2d 649, 653 (Cal.
1953) ; *Boullioun* v. *Little Rock*, 3 S.W.2d 334, 336 (Ark.
1928) ; *Hawkins* v. *Common Council*, 158 N. W. 953, 957
(Mich. 1916) ; *Mayor of City of Everett* v. *Superior Court*, 85
N.E.2d 214, 219 (Mass. 1949) ; *Emerson* v. *Hughes*, 90 A.2d
910, 915–917 (Vt. 1952) ; *State.* v. *Humphreys*, 40 S.W.2d
405, 406 (Tenn. 1931) ; *Hammers* v. *Board*, 134 N.E.2d 647,
650 (Ill. 1956) ; *Cooke* v. *Dodge*, 299 N.Y.S. 257, 262 (1937).

En los procedimientos disciplinarios contra los abogados

---

([11]) En algunos de los casos citados los tribunales estatales han aplicado
la conocida "regla de la necesidad." Véase sobre la cuestión general 2 Davis
*op. cit.* págs. 175–183.

también existe la práctica, sostenida por disposiciones de constitución, ley o reglamento, de encomendar a un mismo organismo o funcionario las tareas de investigar, ordenar la formulación de la querella y resolver el caso en su fondo. De acuerdo con la información comprendida en la obra de George E. Brand, *Bar Associations, Attorneys and Judges–Organization, Ethics, Discipline* (1956) los tribunales desempeñan esas funciones en la jurisdicción federal [12] y en dieciséis estados, [13] mientras que en diez estados [14] se les encomiendan a organismos profesionales, sujetos a revisión judicial. Cuatro estados [15] consignan ambos procedimientos, en la alternativa. En Puerto Rico la jurisprudencia consagra la facultad de este Tribunal de ordenar que se investigue la conducta de cualquier abogado y, una vez examinado el informe correspondiente, de disponer que se formule querella en su contra para luego el propio Tribunal resolver el caso

---

[12] Regla 8 del Reglamento del Tribunal Supremo; Regla 7(3) del Primer y Quinto Circuito; Regla 78 del Court of Claims; Regla 8(3) del Tercer Circuito; Regla 7(e) del Distrito de Columbia. *Theard* v. *United States,* 354 U. S. 278, 281 (1957). La constitucionalidad de esa combinación de funciones en la jurisdicción federal ha sido declarada en *Randall* v. *Brigham,* 74 U. S. 523, 539–540 (1868); *Ex parte Wall,* 107 U. S. 265, 271, 273, 289–290 (1882); *Herman* v. *Dulles,* 205 F.2d 715, 717 (D. C. Cir., 1953); *In re Claiborne,* 119 F.2d 647, 650 (C.C.A. 1, 1941). Cf. *Theard* v. *United States,* supra, pág. 282; *Selling* v. *Radford,* 243 U. S. 46 (1917); *Coughlan* v. *United States,* 236 F.2d 927, 928 (C.C.A. 9, 1956); *In re Fletcher,* 221 F.2d 477 (C.C.A. 4, 1955); *In re Los Angeles County Pioneer Society,* 217 F.2d 190 (C.C.A. 9, 1954).

[13] Alabama, Connecticut, Georgia, Indiana, Iowa, Kansas, Massachussetts, Nebraska, New Hampshire, New Jersey, New York, North Dakota, Ohio, South Dakota, Tennessee y Virginia.

[14] Arizona, Colorado, Delaware, Idaho, Kentucky, Michigan, Minnesota, Nevada, North Carolina y Oklahoma.

[15] California, Illinois, Pennsylvania y West Virginia. Véase sobre la validez de estas prácticas en los estados: *McVicar* v. *State Board,* 6 F.2d 33 (C. C. Wash., 1925); *State* v. *Humphreys,* 40 S.W.2d 405, 406 (Tenn., 1931); *Harrison* v. *Commonwealth,* 204 S.W.2d 221, 222 (Ky., 1947); *In re Hosford,* 252 N. W. 843, 848 (S. D. 1934); *Snyder's Case,* 152 Atl. 33, 35 (Pa. 1930); Monografía, *Suspension or revocation of medical or legal professional license as violating due process,* 98 L. ed. 851, 855–864 (1954). Cf. *People ex rel Karlin* v. *Culkin,* 248 N. Y. 465 (1928); *In re Disbarment Proceedings,* 184 Atl. 59, 67 (Pa., 1936).

en sus méritos. *In re González Blanes*, 65 D.P.R. 381, 390–392 (1949); *In re Porrata Doria*, 73 D.P.R. 725, 726 (1952); *In re Guzmán*, 80 D.P.R. 713 (1958); Cf. *In re Pagán*, 71 D.P.R. 761, 763 (1950). Varios estados proveen procedimientos judiciales o administrativos para disciplinar a jueces de determinadas categorías([16]) y en ellos también se permite la ya descrita combinación de funciones.([17])

· Pero no es únicamente en la adjudicación administrativa y en los procedimientos disciplinarios contra abogados y jueces donde se validan los contactos iniciales del juzgador con la prueba. En el procedimiento civil y criminal existen numerosas ocasiones en las cuales el juez que va a fallar el litigio en su fondo adquiere de alguna manera, en mayor o menor grado, conocimiento inicial de los hechos o se le exige que en principio acepte determinada apreciación de las alegaciones para sobre esa base asentar un criterio jurídico. Descontando la cuestión elemental de la "imagen" que pueda forjarse el juez al examinar unas alegaciones bien o mal redactadas, pueden citarse, como ejemplos de lo anterior, sus dictámenes sobre mociones de desestimación, solicitudes de órdenes de entredicho, mociones de sentencia sumaria y de nuevo juicio y su participación en las conferencias anteriores al · juicio (*pretrials*), en los actos de conciliación de ciertos casos de di-

---

([16]) El juicio de residencia ante las cámaras legislativas o ante ciertos organismos especiales es el método que se utiliza en los Estados Unidos para destituir a los jueces federales y a los jueces de los tribunales de apelación y tribunales intermedios de la gran mayoría de los estados. Examínense las páginas pertinentes de la obra de Brand, supra.

([17]) Alabama: *Alabama Code of 1907*, sec. 7125. Minnesota: *General Statutes of Minnesota 1913*, secs. 5724–5725. New York: Constitución, Art. 6, Secs. 9(a) y 17—2 McKinney's, *Consolidated Laws of New York*, págs. 132–134, 153; Código de Procedimiento Criminal, art. 132—66 McKinney's, *op. cit.* pág. 132. North Dakota: 4 *North Dakota Revised Code of 1943*, secs. 441101–441114. Virginia: 3 *Code of Virginia 1950*, secs. 15–500 a 15–503. *West Virginia Code of 1949, Annotated*, secs. 17.09(4), 17.12(1)(b).

Examínense: *Handler* v. *Berry*, 247 N.Y.S. 46 (1931); *Kane* v. *Rudich*, 10 N.Y.S.2d 929 (1939); *Opinion of the Justices*, 248 N.Y.S. 312 (1931); *State* v. *Hasty*, 63 So. 559 (Ala. 1913); *Martin* v. *Dodge County*, 178 N. W. 167 (Minn. 1920); Dawley, *The Governor's Constitutional Power of Appointment and Removal*, 12 Minn. L. Rev. 451, 474–477 (1938).

vorcio y en los innumerables incidentes provocados por los métodos modernos de descubrimiento de pruebas. Más aún, tanto en el procedimiento administrativo como en el criminal y el civil no es nula por deformidad constitucional la actuación de un juzgador que preside un nuevo juicio luego de haberse revocado el fallo que él dictara en el juicio anterior, cuando tuvo la oportunidad de conocer todos los detalles de la prueba.([18]) *Pueblo* v. *Ortiz*, 22 D.P.R. 185, 187 (1915);([19]) *Kolowich* v. *Wayne Circuit Judge*, 250 N. W. 875 (Mich. 1933); *In re J. P. Linahan*, 138 F.2d 650 (C.C.A. 2, 1943); *Board of Medical Examiners* v. *Steward*, 102 A.2d 248, 252 (Md. 1954); *Walker* v. *State*, 84 So.2d 383 (Ala. 1955); Monografía, *Right of judge to retry case or review his own*

---

([18]) Idéntica norma se ha aplicado cuando el juez interviene en varios juicios contra distintas personas acusadas por los mismos hechos. *Thanos* v. *Superintendent, Maryland State Reformatory*, 104 A.2d 926, 927 (Md. 1954); *Ferrari* v. *United States*, 169 F.2d 353, 354 (C.C.A. 9, 1948). También se aplica a casos civiles en circunstancias similares. *Denis* v. *Perfect Parts, Inc.*, 142 F. Supp. 263 (Mass. 1956) y casos allí citados. Véase en general 30 Am. Jur., *Judges*, secs. 178–188.

([19]) En este caso el juez que conoció de la causa había absuelto al acusado, en un juicio anterior, de un delito surgido de los mismos hechos y había ordenado al fiscal que formulara la acusación que se ventiló en el segundo juicio. En *Gandía* v. *Stubbe*, 29 D.P.R. 153 (1921) se sostuvo que un juez que mientras era fiscal había formulado acusación contra una persona que era la parte demandada en un pleito en el cual los hechos que motivaron la acción civil eran los mismos de la acción criminal, no estaba impedido de actuar como juez en dicho pleito. (La Ley núm. 19 de 20 de mayo de 1921—Leyes, pág. 153—estableció luego la norma opuesta. Esa es la situación que prevalece hoy día. Regla 63(c) de las de Enjuiciamiento Civil (1958); *Valentín* v. *Torres*, 80 D.P.R. 463, 481, escolio 20 (1958).) En *Pueblo* v. *Ruiz*, 58 D.P.R. 639, 642–643 (1941) se resolvió que un juez no tiene que inhibirse en una causa criminal porque con anterioridad al juicio le llevaran al acusado a su presencia y él ordenara su arresto, le fijara fianza y le tomara juramento en una declaración ya prestada ante la policía. En *O'Malley* v. *United States*, 128 F.2d 676, 685 (C.C.A. 8, 1942) revocado por otros motivos en 317 U. S. 412 (1943) se sostuvo que no había existido prejuicio contra el acusado porque el juez que luego presidió la causa hubiese solicitado del fiscal que formulara la acusación, comentando que "había base para creer que se había cometido un grave fraude." En cuanto a los efectos de la intervención del juez en el examen preliminar, véase *Wilson* v. *Renfroe*, 91 So.2d 857, 860 (Fla. 1956) y casos allí citados.

*decision,* 57 L. ed. 1003 (1912). En *N.L.R.B.* v. *Donnelly Garment Co.,* 330 U. S. 219, 236 (1947) el Tribunal Supremo federal sostuvo que no era nula tal actuación en el campo administrativo. Y añadió: "Ciertamente no es la regla de la administración judicial que, aparte de los requisitos de ley, se le prohíba a un juez presidir un nuevo juicio porque se le hayan revocado sus dictámenes previos. No encontramos base alguna para imponerle a los organismos administrativos una regla más severa, por efecto de la cual los que presiden las audiencias no pueden actuar porque en una primera vista hubiesen dictaminado vigorosamente contra un litigante."

En resumen, nunca ha sido ni es la norma constitucional que cualquier contacto previo con la prueba, no importa su alcance y efectos, incapacite a un juzgador para dirimir posteriormente los méritos de una controversia. En cada situación en que se alegue ese defecto constitucional hay que considerar la índole del procedimiento, el grado de relación del juez con la prueba y los probables efectos de esa relación sobre su desinterés e imparcialidad y calibrar esos factores a la luz de la entereza moral y la disciplina profesional que necesariamente debe tener cualquier juez que merezca ese nombre. Hasta el presente, sólo en situaciones extremas como la de *In re Murchison* es que por tal defecto se ha decretado la invalidez de una causa.[20] Sostenemos, por todo lo expresado anteriormente, que el procedimiento instituído por la sec. 24 de la Ley de la Judicatura no transgrede el debido procedimiento de ley.[21]

---

[20] No estamos considerando, desde luego, los casos de interés personal del juez en el resultado del litigio. La ley se encarga de establecer las causas de inhibición para tales ocasiones. *Valentín* v. *Torres,* supra, págs. 479–482. Véase, además, *Tumey* v. *Ohio,* 273 U. S. 510 (1927).

[21] Al así hacerlo no debe entenderse que estimamos que sea ese el mejor procedimiento. Tal determinación, de conformidad con el Art. V, Sección 11 de la Constitución, corresponde hacerla a la Asamblea Legislativa y no a nosotros. Sí es de nuestra incumbencia indicar que cualquier procedimiento que se adopte deberá colocar en manos diestras y responsables la función de resolver si se expide o no querella contra un juez. De lo contrario se expondría a los jueces a multitud de procedimientos motivados por quejas irresponsables e injustificadas con la consiguiente amenaza a su

*Se decreta la destitución del querellado a contar de la fecha de nuestra resolución suspendiéndole de empleo y sueldo.*

El Juez Asociado Sr. Belaval concurre con el resultado en opinión separada.

El Juez Asociado Sr. Hernández Matos no intervino.

El Juez Asociado Sr. Santana Becerra concurre con la opinión y somete un voto explicativo.

---

Opinión separada del Juez Asociado Sr. Belaval.

Estamos ante un procedimiento de destitución, ordenado por este Tribunal, en el cual se solicita la destitución permanente del querellado de su cargo de Juez del Juzgado de Paz de Puerto Rico.

La evidencia presentada ante este Tribunal dejó claramente probados los hechos alegados en la querella. Parece que el estallido inoportuno de una pasión otoñal le hizo cometer a este Juez una serie de dislates que nadie hubiera esperado de su limpia hoja de servicios. En abono suyo debemos añadir que su defensa fue discreta, considerada, algunas veces adornada por un caballeroso silencio. No hay duda, pues, que estamos ante un caso de "conducta inmoral", tal como se dispone en la sec. 24 de la Ley núm. 11 de 24 de julio de 1952—4 L.P.R.A. 813, sec. 232.

La defensa del querellado no se basa en la insuficiencia de los hechos jurídicos, sino en dos cuestiones de derecho, de carácter estatutario una y de carácter constitucional otra. La cuestión estatutaria se reduce a alegar que la sec. 24 de la Ley núm. 11 de 24 de julio de 1952 "no confiere autoridad

---

tranquilidad y a la estabilidad y reputación del sistema. Una buena discusión de estos problemas, a la luz de la experiencia nacional y extranjera, se encuentra en Burke Shartel, *Retirement and Removal of Judges*, 20 Journal of the American Judicature Society 133 (1936). Examínense, además, Institute of Judicial Administration, *Selection, Tenure and Removal of Judges in the 48 States, Alaska, Hawaii and Puerto Rico* (1956); Pedro Muñoz Amato *et al, La Nueva Constitución de Puerto Rico* (1954) 495–498; *Selection and Tenure of Judges*, 11 Journal of the American Judicature Society 145, 151 (1927).

al Tribunal Supremo para ventilar querellas contra un Juez de Paz", pues la sección se refiere exclusivamente a los Jueces de los Tribunales de Puerto Rico y no puede aplicarse a los Jueces de Paz por no pertenecer éstos a Tribunal alguno. Ya hemos resuelto que los Jueces de Paz siguen siendo jueces de instrucción a los efectos de "fijar y aprobar fianzas y expedir órdenes de arresto, de registro y de allanamiento". *Pueblo* v. *Tribunal Superior*, 80 D.P.R. 504 (1958), (Santana Becerra) cita precisa a la pág. 510. En este sentido forman parte del nuevo sistema judicial establecido por la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 1952. La sec. 21 de dicha ley estatuye que los jueces de paz "serán destituídos como más adelante se provee en la Sección 24", que es la sección aplicable a las destituciones de los jueces del Tribunal de Primera Instancia.

El argumento del querellado es que la sec. 21, al disponer que "Los actuales jueces de paz seguirán en sus cargos hasta la expiración del término por el cual fueron nombrados y serán destituídos como más adelante se provee en la Sección 24" limita la aplicabilidad de la sec. 24 a los jueces en funciones al momento de aprobarse la ley, y no a los jueces, que como el querellado, fueron nombrados posteriormente. Si este error en la redacción fuera el principio determinante, no por ello dispondría del principio consecuente necesario a toda interpretación. Como bien nos indica el Secretario de Justicia, tal interpretación conduciría al absurdo al crear una sanción para los jueces en funciones al momento de aprobarse la Ley y no crear sanción alguna para los jueces posteriormente nombrados. Es evidente que esa no es la intención del estatuto, y que no obstante la conjunción empleada en la redacción puramente gramatical del estatuto, se trata de dos disposiciones distintas, independiente la una de la otra. Por eso hemos aplicado conjuntamente las secs. 21 y 24, cuando de destituciones de Jueces de Paz se trata: *In re Dávila*, 79 D.P.R. 816, (*Per Curiam*), (1957) cita precisa a la pág. 818.

La cuestión constitucional envuelta merece una consideración más extensa. La sec. 24 de la Ley de la Judicatura de 1952 dispone el siguiente procedimiento de destitución:

"Cualesquiera cargos que se formularen contra cualquier juez del Tribunal de Primera Instancia serán presentados ante el Director Administrativo de la Oficina de Administración de los Tribunales, quien informará de ello al Juez Presidente y si el Tribunal Supremo así lo desea, recomendará la acción ulterior a tomarse o el archivo de los cargos. El Tribunal Supremo ordenará que se practique la investigación que creyere conveniente y podrá solicitar del Secretario de Justicia que practique tal investigación y rinda un informe al Tribunal.

"Si el Tribunal Supremo determinare que existe causa para ulteriores procedimientos, podrá solicitar del Secretario de Justicia o de cualquier funcionario del Tribunal que radique la correspondiente querella. El Secretario de Justicia también, a iniciativa propia, o por orden del Gobernador, podrá iniciar el procedimiento para la destitución de un juez y entonces actuará como querellante. El procedimiento se iniciará mediante querella dirigida al Tribunal Supremo imputándole al Juez conducta inmoral o negligencia en sus deberes judiciales. El Tribunal dará a las partes la oportunidad de ser oídas, en unión a sus testigos y el Tribunal podrá en su discreción mientras se sustancia el procedimiento suspender al Juez de empleo y sueldo. Si el Tribunal considerare que los cargos, o parte de ellos, han sido probados, podrá censurar o suspender al juez querellado, o destituirlo permanentemente de su cargo, según bajo las circunstancias concurrentes, creyere que sea la pena más adecuada."

El querellado alega que la citada sec. 24 es inconstitucional porque "habiendo este mismo Tribunal determinado la existencia de causa para la radicación de la querella está impedido de resolver el caso en los méritos ya que de hacerlo estaría privando al querellado del debido procedimiento de ley", puesto que "las garantías del debido procedimiento de ley exigen que los procedimientos judiciales o cuasi judiciales se lleven a efecto ante un Tribunal imparcial, que no haya tenido previamente oportunidad de formar opinión sobre los hechos envueltos" y que "conforme al caso de *In re Murchison*, 349 U. S. 133 (1955), el Juez que determina causa probable

en un caso criminal está impedido de juzgar el caso en sus méritos", siendo esta regla aplicable también a casos de carácter administrativo, de acuerdo con la decisión del caso *Wong Yang Sun* v. *McGrath*, 339 U. S. 33 (1950), solicitando además que se determine la posible aplicabilidad de las decisiones de *Shields* v. *Utah-Idaho C. R. Co.*, 305 U. S. 177 (1938) y *Yamataya* v. *Fisher*, 189 U. S. 86 (1903) a los hechos de este caso.

Tal jurisprudencia no es aplicable a un procedimiento de destitución de jueces. El error en el enfoque general de la cuestión cometido por el apelante, es haber considerado al procedimiento de destitución de jueces como uno de naturaleza penal o administrativa. El procedimiento de destitución no se da en sustitución de ningún enjuiciamiento por la comisión de un delito. El único propósito de la destitución, es la recuperación por el Estado de aquellas prerrogativas de su poder público delegadas a un magistrado. En la Sección 21 del Artículo III de nuestra Constitución, referente a los residenciamientos, se establece la separabilidad de ambos procedimientos, al decir: "la persona residenciada quedará expuesta y sujeta a acusación, juicio, sentencia y castigo conforme a la ley".

Tampoco puede considerarse el procedimiento de destitución de un Juez como un procedimiento de carácter administrativo. Las magistraturas, por su especial naturaleza pública, no le pertenecen a sus incumbentes, sino al Estado. En nuestro sistema judicial, ninguna magistratura puede considerarse como un derecho de propiedad. Lo que sí constituye es una dignidad de tal rango, que cualquiera intervención viciosa con ella, equivaldría a anular una de las seguridades más deseables de nuestra reforma constitucional.

Si se examina con detenimiento la Sección 1ra. del Artículo V de nuestra Constitución resalta el principio que el "poder judicial" es una prerrogativa del poder público del Estado, que disfrutan todos los magistrados, independientemente de sus respectivas jerarquías, tan pronto asumen sus funciones

judiciales. Si se examinan con igual detenimiento las Secciones 11 del Artículo V y 21 del Artículo III de nuestra Constitución, se ve que el criterio del residenciamiento o destitución, se hace depender más de la jerarquía de las magistraturas envueltas, que de una distinta concepción política del poder de dichas magistraturas. El resultado en ambos procedimientos es el mismo: la recuperación por el Estado de aquellas prerrogativas de su poder público delegadas a un magistrado. Esto es lo que le da al procedimiento de la destitución de un Juez ese carácter especial que nos impide considerarlo como algo comprendido en el Derecho penal o en el Derecho administrativo.

Considerada a su vez la sec. 24 de la Ley de la Judicatura de 1952, bajo su propia luz, es claro que la fase inicial del procedimiento está encomendada al tradicional poder de vigilancia que poseen inherentemente los Tribunales de Ultima Instancia o jerarquía superior sobre los Tribunales de Primera Instancia o jerarquía menor, y que el hecho de estar todas las querellas contra jueces referidas a nuestro Tribunal, no obedece a otro plan que permitirle a este Tribunal, una mayor inspección del sistema y una mejor oportunidad de establecer un cuerpo de principios éticos de aplicación uniforme. Si la causa es leve o levísima, nuestro Tribunal puede escoger entre la censura o el archivo de los cargos. Si la causa es grave, entre la suspensión temporal o la destitución.

Como se ve, hasta el momento de ordenarse la radicación de una querella contra un magistrado, el Tribunal Supremo de Puerto Rico no hace otra cosa que ejercitar su poder de inspección sobre todo el sistema. Después de radicada la querella, actúa en una función pública parecida a la que ejerce el cuerpo legislativo en un caso de residenciamiento. Que a esta última función pueda dársele un carácter de procedimiento judicial, adoptando el método más seguro con que se cuenta para dilucidar la justicia de una causa, no altera la naturaleza pública de la misma.

Es indudable que en este caso, el querellado trató de usar de su poder judicial para "il suo particolare". Los Jueces tienen mucho poder, un poder que tiende a ser estable no sólo por selección de la magnificencia humana, sino por una larga tradición democrática. Por lo mismo, su conducta personal tiene que pertenecer a una cultura de abstención de poder. Tal vez la democracia toda no sea otra cosa que una cultura de abstención de poder. En cuanto alguien se olvida de esta condición especial del poder público, tiembla todo el orden democrático.

Por las razones expuestas, estoy conforme con la destitución del querellado a contar desde la fecha de nuestra resolución suspendiéndole de empleo y sueldo.

—————

Opinión separada del Juez Asociado Sr. Santana Becerra.

Al concurrir en la Opinión del Tribunal deseo exponer, conforme a mis pronunciamientos en *In re Fernando Gallardo Díaz*, ante págs. 19, 77, que participo del criterio expresado por el Juez Sr. Belaval en lo referente a la naturaleza del procedimiento para la destitución de jueces. Entiendo que el mismo constituye esencialmente un instrumento del Poder Público en amparo, a ambos efectos, de la función de soberanía delegada a los magistrados, cualquiera que sea el cuerpo juzgador que intervenga. En cuanto a los casos a ser ventilados ante este Tribunal, basta con que el fallo que se emita responda a una convicción depurada a la luz de la evidencia ofrecida por las partes en la audiencia que la ley dispone.