EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
AGRIPINO PACHECO, acusado y apelante.

*Número:* 16144.   *Resuelto:* 11 de agosto de 1961.

*Héctor Lugo Bougal* y *Jorge Díaz Cruz,* abogados del apelante;
*José Trías Monge, Secretario de Justicia, Rafael L. Ydrach
Yordán, Fiscal Tribunal Superior, Ramón C. Ruiz Sánchez,*

*Fiscal Auxiliar, Tribunal Supremo,* abogados de El Pueblo, apelado.

Sala integrada por el Juez Asociado señor Blanco Lugo, como Presidente de Sala, y los Jueces Asociados señores Rigau y Dávila.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

El caso de autos plantea la misma cuestión que resolvimos en *Pueblo* v. *Quiles,* 83 D.P.R. 63 (1961). Sólo un detalle lo distingue que amerita no lo resolvamos por lo en aquél decidido. Y es que en éste la acusación radicada por el fiscal "está basada en el testimonio de testigos examinados bajo juramento ante el Hon. Waldemar del Valle, Juez de Distrito de Ponce," que fue el mismo juez que determinó causa probable para expedir una orden de allanamiento con el propósito de registrar la residencia del apelante, determinó que existía causa probable para el arresto y presidió la vista del caso en su fondo.

Así, la única cuestión que distingue a éste del de *Quiles,* es que aquí la acusación se basa en el testimonio de testigos examinados *ante* el juez que luego presidió la vista. En *Quiles* el juez sólo tuvo ante sí declaraciones juradas. En éste los testigos comparecieron personalmente y fueron examinados *ante* el magistrado. ¿Exige esta diferencia en los hechos un resultado distinto?

En *Quiles,* citando a *In re Marín Báez,* 81 D.P.R. 274 (1959) dijimos:

"En resumen, nunca ha sido ni es la norma constitucional que cualquier contacto previo con la prueba, no importa su alcance y efectos, incapacite a un juzgador para dirimir posteriormente los méritos de una controversia. En cada situación en que se alegue ese defecto constitucional hay que considerar la índole del procedimiento, el grado de relación del juez con la prueba y los probables efectos de esa relación sobre su desinterés e imparcialidad y calibrar esos factores a la luz de la entereza moral y la disciplina profesional que necesariamente debe tener cualquier juez que merezca ese nombre."

Procede pues que con miras al criterio antes expresado, determinemos si el hecho de que los testigos fueron examinados ante el juez que presidió luego el juicio macula su imparcialidad hasta el punto que requiera que revoquemos la sentencia por haberse vulnerado el debido proceso de ley que le garantiza la Constitución a todo acusado de delito público.

Al igual que en el caso de *Quiles*, el apelante en el presente invoca a *In re Murchison*, 349 U.S. 133, para sostener su recurso. Pero es que repitiendo lo que dijimos en *Quiles*, en *Marín Báez* explicamos a *Murchison*, y lo distinguimos de hechos análogos a los del presente, apuntando además que el Tribunal Supremo de los Estados Unidos en los casos de *Nilva* v. *United States*, 352 U.S. 385 (1957), y *Green* v. *United States*, 356 U.S. 165 (1958), había limitado considerablemente lo expuesto por la mayoría en *Murchison*.

Dijimos en *Marín Báez* y repetimos en *Quiles* que en cada caso había que considerar la índole del procedimiento, el grado de relación del juez con la prueba y los probables efectos de esa relación sobre su desinterés e imparcialidad. En el caso de autos no se ha elevado la transcripción de la evidencia del caso en sus méritos. Sólo está ante nos aquella que se refiere al incidente sobre el allanamiento. Así, la cuestión la tenemos que considerar en su aspecto puramente de derecho, pues no ha habido intento de demostrar que en verdad el juez actuó con prejuicio y parcialidad.

Procede aclarar que en el presente, el juez ante quien examinaron los testigos de cargo no hizo determinación alguna sobre la inocencia o culpabilidad del acusado. Sólo determinó que existía causa probable, y en ausencia de prueba al efecto, nada se señala que le impidiera posteriormente hacer una determinación justa e imparcial sobre la inocencia o culpabilidad del acusado, luego de oir y considerar tanto la prueba de cargo como la de defensa.

Considerando la cuestión en su aspecto teórico encontramos que se ha sostenido que el hecho de que un juez deter-

mine que hay causa probable para la detención de un acusado en la vista de un hábeas corpus, esa determinación no lo incapacita para presidir la vista del caso en su fondo. *State* v. *Schweider*, 94 N. W.2d 154 (Wis. 1959).

En el caso de *MacKay* v. *McAlexander*, 268 F.2d 35 (CA 9, 1959), se levantó la cuestión de que no se había celebrado una vista imparcial ante el Servicio de Inmigración y Naturalización, ya que el funcionario que recibió la prueba fue el mismo que presidió la vista en el proceso relacionado con la deportación.

Resolviendo la cuestión se expresó así el tribunal a la pág. 39:

"La opinión desfavorable que un funcionario judicial o un juez de instancia pudiera abrigar acerca de una de las partes o testigos, como resultado de haber recibido evidencia durante una vista anterior que se relacione con los hechos que se ventilan, no es el 'prejuicio' que incapacitaría a un funcionario judicial. . . . El hecho de que el mismo funcionario judicial presidiera ambos procedimientos no vulnera el debido proceso de ley."

■ Normalmente la cuestión de prejuicio y parcialidad de parte del juzgador se levanta mediante moción sostenida por declaración jurada, donde se establece en qué se funda el prejuicio y la imparcialidad.(¹) Al considerar la cuestión de prejuicio y parcialidad planteada por un acusado mediante la radicación de moción y declaración jurada complementaria en un caso cuyos hechos son similares a los del presente,

---

(¹) A la fecha del juicio el art. 23 del Código de Enjuiciamiento Civil (32 L.P.R.A. sec. 131) establecía los casos en los que un juez debía inhibirse. Este artículo fue copiado de California y corresponde al art. 170 del Código de Enjuiciamiento Civil de aquel estado. Allá se enmendó para incluir prejuicio y parcialdad como fundamento para la inhibición. En el presente caso y en el de *Quiles*, hemos considerado la cuestión, pues se alega se ha infringido el debido proceso de ley a que tiene derecho todo acusado, y si en verdad dicha garantía constitucional hubiere sido vulnerada procede su consideración aunque no exista estatuto específico que autorice su planteamiento. *Chessman* v. *Teets*, 354 U. S. 156, 165 (1957). La Regla 63.2 de las de Procedimiento Civil de 1958 autoriza la impugnación del juez por prejuicio.

la Corte de Apelaciones para el Primer Circuito se expresó
así en el caso de *Craven* v. *United States*, 22 F.2d 605 (1927),
cert. denegado, 276 U. S. 627, 72 L. Ed. 739:

"A lo sumo, pues, el affidávit imputa un 'prejuicio' fundado
en la evidencia producida en corte abierta durante el primer
juicio y en nada más resolvemos que tal 'prejuicio' (si es que
ha de considerarse éste un término apropiado para referirse
a un estado mental bien formado, 255 U. S. 42, 41 S. Ct. 236,
65 L. Ed. 481) no es personal; es judicial. Lo 'personal' con-
trasta con lo judicial; caracteriza una actitud de origen extra-
judicial, que se produce non coram judice. El término 'perso-
nal' caracteriza claramente el prejuicio que se ha de evitar. Es
la palabra significativa contenida en el estatuto. Es deber de
un juez que merezca ese nombre, derivar sus puntos de vista
de la evidencia. El estatuto nunca contempló inhabilitar a
nuestros tribunales mediante la descalificación de un juez, sobre
la base única de un prejuicio (o estado mental, 255 U. S. 42, 41
S. Ct. 236, 65 L. Ed. 481) contra violadores de la ley, civil o
penal, derivada de evidencia presentada en el curso de procedi-
mientos judiciales en que dicho juez ha entendido. Cualquiera
otra interpretación convertiría el estatuto en un escollo into-
lerable a una eficiente administración de los procedimientos
judiciales, los cuales de por sí no son hoy día muy rápidos
o efectivos.

A base de la teoría ahora levantada, ningún juez estaría
calificado para juzgar dos veces un mismo caso. No importa
que el segundo juicio sea el resultado de no llegar a un acuerdo
el jurado, por razones de incompetencia o aun de corrupción,
o porque el juez que entendió en el caso declare con lugar una
moción de nuevo juicio, o porque un tribunal de apelación sos-
tenga un señalamiento de error. Si, como resultado del primer
juicio, el juez adquiere un prejuicio o estado mental a favor
o en contra de cualquiera de las partes, como desde luego ha
de ocurrir, queda descalificado.

. . . . . . . .

Si, como aconteció en muchos de los casos reportados, se
permitiese que este estatuto fuera usado por abogados excesi-
vamente celosos, que empequeñecieren su deber profesional
hacia el bienestar público y hacia el tribunal en su calidad de
protector del derecho público, como un método para lograr una
demora (U. S. v. Fricke [D. C.] 261 F.541), y en muchos casos

un nuevo juicio ante un juez que deberá acercarse, de novo, a problemas previamente considerados por otro juez (Ex parte Am. Steel Barrel Co., 230 U. S. 35, 44, 33 S. Ct. 1007, 57 L. Ed. 1379) el estatuto habría de proveer inmunidad contra ataque únicamente a aquellos peleles amorfos que fueron condenados por el juez McReynolds por ser depositarios impropios del poder judicial (255 U. S. 43, 41 S. Ct. 236, 65 L. Ed. 481). Solamente los tímidos y los incompetentes, si es que los hay ahora o ha de haberlos en el futuro en la judicatura federal, estarían exentos de ser atacados bajo este estatuto."

■ En *Gallarelli* v. *United States*, 260 F.2d 259 ( (CA 1 1955) se reafirmó lo resuelto en el caso de *Craven*, que acabamos de citar.

Se ha establecido que a menos que se demuestre específicamente prejuicio y parcialidad de parte de un juez que preside una vista, el hecho de que ese mismo juez haya participado en procedimientos anteriores relacionados con el caso, no lo descualifica para actuar en la vista principal. Tampoco es razón para su descualificación el hecho de que hubiera presidido la vista de un caso que hubiera sido revocado. *State* v. *Walker*, 166 A.2d 567 (N. J. 1960); *United States* v. *Richmond*, 178 F.Supp. 44 (D.C. Conn. 1958); *Ferrari* v. *United States*, 169 F.2d 53 (CCA 9, 1948); *Wilson* v. *Renfroe*, 91 So.2d 857 (Fla. 1956) Anotación 57 L. Ed. 1003 y *Cf. Frank, Desqualification of Judges*, 56 Yale L. J. 605 (1947).

Sobre este particular dijimos en *Marín Báez* y ratificamos en *Quiles:*

". . . En el procedimiento civil y criminal existen numerosas ocasiones en las cuales el juez que va a fallar el litigio en su fondo adquiere de alguna manera, en mayor o menor grado, conocimiento inicial de los hechos o se le exige que en principio acepte determinada apreciación de las alegaciones para sobre esa base asentar un criterio jurídico. Descontando la cuestión elemental de la 'imagen' que pueda forjarse el juez al examinar unas alegaciones bien o mal redactadas, pueden citarse, como ejemplos de lo anterior, sus dictámenes sobre mociones de desestimación, solicitudes de órdenes de entredicho,

mociones de sentencia sumaria y de nuevo juicio y su participación en las conferencias anteriores al juicio (pretrials), en los actos de conciliación de ciertos casos de divorcio y en los innumerables incidentes provocados por los métodos modernos de descubrimiento de pruebas. Más aún, tanto en el procedimiento administrativo como en el criminal y el civil no es nula por deformidad constitucional la actuación de un juzgador que preside un nuevo juicio luego de haberse revocado el fallo que él dictara en el juicio anterior, cuando tuvo la oportunidad de conocer todos los detalles de la prueba."

En adición a todo lo expuesto, la realidad es que la práctica que aquí se impugna, al efecto de que el juez instructor puede conocer del caso en su fondo, se ha seguido en Puerto Rico durante los últimos cincuenta años. Y es principio bien establecido en el derecho constitucional que para atacar como contraria al debido proceso de ley una práctica que ha sido sancionada por el transcurso del tiempo es imperativo que se aduzcan fundamentos de gran solidez. Un ataque basado en meros principios teóricos no sería suficiente. *Frank* v. *Maryland*, 359 U. S. 360 (1959).(²)

■ Pasamos a considerar el planteamiento del apelante mediante el cual impugna el allanamiento de su residencia. Sostiene que la orden expedida es nula. Basa su contención en que el art. 511 del Código de Enjuiciamiento Criminal (34 L.R.A. sec. 1821) sólo permite el registro durante las horas de la noche, cuando el que solicita la expedición de la orden, establece claramente en la declaración jurada, que está positivamente seguro que lo que se busca se encuentra en el lugar que ha de ser registrado. Este requisito de seguridad que establece la ley que debe existir para que proceda un allanamiento durante las horas de la noche, claramente tiene por propósito proteger la inviolabilidad del hogar. Es una salvaguarda contra el uso arbitrario del poder que se le concede al

---

(²) La cuestión envuelta consistía en determinar si el allanamiento de una morada, sin orden judicial a ese efecto, por un inspector de sanidad, violaba la garantía del debido proceso de ley. Se resolvió que el uso sancionaba la práctica.

estado para registrar el hogar de los ciudadanos. Claramente el allanamiento durante las horas de la noche debe ser la excepción. Sólo está justificado cuando las circunstancias todas, lleven al convencimiento de los funcionarios encargados de hacer cumplir las leyes que la evidencia que trata de ocuparse desaparecería si se aguardara para hacer el registro hasta el día siguiente. Sostiene el apelante que a pesar que de la declaración jurada presentada en este caso no surge tal seguridad, se expidió para que se procediera al registro durante las horas del día o de la noche.

Examinada la declaración jurada presentada, encontramos que de la misma surge que el declarante estaba positivamente seguro que en la residencia a registrarse se encontraba el material de bolita descrito en la declaración. Tan seguro estaba, que afirma lo vio. Declaraciones redactadas en igual sentido que la que nos ocupa, fueron determinadas suficientes en los casos de *Pueblo* v. *Negrón*, 72 D.P.R. 882 (1951) y *Pueblo* v. *DeJesús*, 73 D.P.R. 752 (1952).

No se cometieron ninguno de los errores señalados. *Procede la confirmación de la sentencia.*